United States Court of Appeals
For the Eighth Circuit
_____

No. 12-3701
_____

In re: Chester Wayne King, doing business as The King's Pickle, Formerly doing business as K.C. Country, Formerly doing business as Hoot 'n Anny's

*Debtor*

------------------------------

Frank Williams; Stephen Sherman Wyse

*Appellants*

v.

Chester Wayne King

*Appellee*

_____

Appeal from the United States Bankruptcy
Appellate Panel for the Eighth Circuit
_____

Submitted: September 26, 2013
Filed: March 5, 2014
_____

Before RILEY, Chief Judge, BYE and GRUENDER, Circuit Judges.
_____

BYE, Circuit Judge.

Chester King moved for sanctions after Stephen Wyse, representing one of King's creditors, filed suit in state court seeking in part to recover a debt discharged by King's bankruptcy. After Wyse and his client, Frank Williams, failed to appear in opposition, the bankruptcy court[1] granted the motion. Wyse and Williams filed a motion for relief, which the bankruptcy court granted in part following an evidentiary hearing. Wyse and Williams filed a second motion for rehearing or relief, which the bankruptcy court denied. Wyse and Williams appealed to the Bankruptcy Appellate Panel (BAP), which affirmed. Wyse and Williams now appeal the orders granting in part the first motion for relief and denying the second motion for rehearing or relief. We affirm.

I

In 2008, King began borrowing money from Williams. After making several payments on an initial loan agreement, King negotiated with Williams to borrow more money. King and Williams agreed to incorporate the outstanding balance of the original loan as part of the principal of a new loan through which Williams provided King with additional funding. Between 2008 and April 2010, King and Williams repeated this process several times. As of April 12, 2010, King still owed Williams an unknown[2] amount ("the pre-conversion debt") on one such loan agreement.

In February 2010, King filed for Chapter 13 bankruptcy. Prior to filing, King notified Williams of his intention to file for bankruptcy. King indicated to Williams he would not list Williams as a creditor or the pre-conversion debt as one he would seek to discharge through the bankruptcy. King later petitioned to convert his

---

[1] The Honorable Dennis R. Dow, United States Bankruptcy Judge for the Western District of Missouri.

[2] The amount remains unknown because Williams did not provide the bankruptcy court with sufficient credible evidence to make a determination.

Chapter 13 bankruptcy to a Chapter 7 bankruptcy, which the bankruptcy court granted on April 12, 2010. Nowhere in the documentation associated with either the initial filing or the conversion petition did King list Williams or the pre-conversion debt he owed to Williams.

On April 19, 2010, King and Williams, as had been their practice, executed a new loan agreement ("the April agreement"), intending part of the principal of the new loan to be King's reaffirmed pre-conversion debt to Williams. The remaining principal was to be made up of an unknown amount of new funds, which Williams provided to King on April 19, and interest. Under the terms of the April agreement, King would owe Williams a total of $81,000. King and Williams later executed two additional post-discharge loan agreements.

Unbeknownst to either King or Williams at the time, the April agreement was unenforceable and did not serve to reaffirm King's pre-conversion debt or prevent it from being discharged through King's bankruptcy. An agreement seeking to reaffirm pre-discharge debt and incorporate it into a new post-discharge debt is only enforceable if numerous requirements are met, including receipt of a bankruptcy court's express approval of the agreement. See 11 U.S.C. § 524(c). King and Williams did not submit their agreement to the bankruptcy court. King's bankruptcy was closed in November of 2010.

For several months, King made payments pursuant to the April agreement. In March of 2011, however, King moved the bankruptcy court to reopen his bankruptcy to add several creditors, including Williams. King also sought to add the outstanding balance of the principal of the April agreement, $76,200, to the debts to be discharged through bankruptcy. King notified Williams of the motion.

Williams filed a pro se objection to the motion to reopen. In his objection, Williams averred the $76,200 represented pre-conversion debt which King had

contracted with Williams to have incorporated into the principal of the April agreement. At the hearing on the motion, Wyse appeared on Williams's behalf. The bankruptcy court informed King, Wyse, and Williams the April agreement had been ineffective to reaffirm the pre-conversion debt as King and Williams had not obtained the court's approval of the April agreement. After the hearing, the bankruptcy court granted King's motion to add Williams as a creditor. The bankruptcy court then re-closed King's bankruptcy, discharging the $76,200 debt associated with the unenforceable April agreement.

Representing Williams, Wyse filed an action in state court to recover the $76,200 as the balance of the April agreement as well as the outstanding balances of the two post-discharge loan agreements between King and Williams. King filed a second motion to reopen, this time for an adversary proceeding seeking sanctions against Wyse, an order for Wyse to dismiss the state court action, and legal fees incurred in responding to filings in the state court action. Wyse received notice of a hearing on the motion but did not forward the notice to Williams, appear, or otherwise respond. On November 2, 2011, the bankruptcy court granted the motion for sanctions against Wyse, ordering him to pay King $1,500 for King's legal fees and dismiss the state court action seeking to recover the three debts.

Wyse and Williams filed a motion for reconsideration claiming the three debts in the state court action all represented post-discharge debt. Noting the lack of a basis for a motion to reconsider under the Federal Rules of Civil Procedure, the bankruptcy court construed the motion as one for relief pursuant to Fed. R. Civ. P. 60(b). The only issue at an evidentiary hearing on the motion was whether the $76,200 associated with the April agreement had been incurred before King's bankruptcy was converted to Chapter 7, which would make it subject to discharge.[3] Inconsistent with

---

[3]King stipulated to the post-discharge character of the other two debts which were the subject of the state court proceedings.

-4-

his earlier assertions in his objection to King's first motion to reopen, Williams testified none of the principal of the debt associated with the April agreement had come from King's pre-conversion debt. Williams acknowledged King had owed him an outstanding debt on April 19, but averred he had ceased trying to collect it. Williams testified the $76,200 associated with the April agreement represented the balance of $63,000 Williams had transferred to King in cash on April 19, 2010, fees associated with obtaining the cash, and interest on both the cash and the fees. Williams's testimony was partially corroborated by a witness who testified she had seen Williams transfer an unknown amount of money from a lockbox into an envelope, and had later seen Williams meet with King on April 19. King also testified inconsistently. After testifying he hadn't received any new funds from Williams on April 19, 2010, King admitted Williams had provided him with an unknown sum in cash but not as much as Williams had claimed.

The bankruptcy court concluded Williams had proven only that some unknown portion of the $76,200 Williams was seeking in the state court action had come from debt incurred on April 19, 2010. As such, Williams was still seeking to collect some of King's pre-conversion debt in the state court action. On February 7, 2012, the bankruptcy court entered an order granting in part the motion for relief. The order allowed Williams and Wyse to continue pursuing the two debts King had stipulated had been incurred post-discharge. It, however, maintained the monetary sanctions against Wyse and the order to dismiss the portion of the state action seeking to recover the $76,200 associated with the April agreement.[4]

---

[4]The bankruptcy court opined it had also been prepared to amend its order to allow Williams to seek to recover any portion of the debt associated with the April agreement which was attributable to the monies Williams had provided on April 19, 2010, but Williams had failed to carry his burden to prove how much he had provided to King on that date. Joint Appendix 150.

-5-

Williams and Wyse filed a second motion for relief or rehearing, asserting new legal theories regarding notice and excusable neglect. The bankruptcy court denied the motion. Williams and Wyse appealed the order granting in part the first motion for relief and the order denying the second motion for rehearing or relief to the BAP, which affirmed. Williams and Wyse now appeal to this court.

II

Williams and Wyse frame their arguments on appeal anything but artfully. As we understand them, however, Williams and Wyse challenge various aspects of the bankruptcy court's order granting in part their first motion for relief and the denial of their second motion for relief or rehearing.[5] On appeal from the BAP, we independently review the decision of the bankruptcy court. In re Treadwell, 637 F.3d 855, 863 (8th Cir. 2011). We review the bankruptcy court's conclusions of law de novo and its findings of fact for clear error. Id. "We review issues committed to the bankruptcy court's discretion for an abuse of that discretion." In re Zahn, 526 F.3d 1140, 1142 (8th Cir. 2008) (quoting In re Farmland Indus., Inc., 397 F.3d 647, 650-51 (8th Cir. 2005)).

III

In challenging the order granting in part the first motion for relief, Williams and Wyse contend the bankruptcy court erred (1) in finding a portion of the debt Williams sought to collect in the state court action was King's pre-conversion debt,

---

[5] Williams and Wyse also raise issues of notice and excusable neglect. They did not, however, properly present those issues to the bankruptcy court, which did not rule on them. Accordingly, we do not address those issues. Matter of Pester Ref. Co., 845 F.2d 1476, 1486 (8th Cir. 1988) ("Because it was not properly raised and litigated in the bankruptcy court and was not addressed by that court, we will not address the merits of Mid-America's setoff claim.").

-6-

and (2) by including in the discharge injunction any debt to Williams King incurred on April 19, 2010.[6]

A.   Finding of Pre-Conversion Debt

Williams and Wyse contend the bankruptcy court clearly erred in finding some of the $76,200 debt associated with the April agreement was King's pre-conversion debt. In essence, Williams and Wyse argue the bankruptcy court incorrectly credited King's inconsistent testimony that part of the debt associated with the April agreement was the balance of his pre-conversion debt, over Williams's inconsistent but partially corroborated testimony on this point. We note "[t]he deference owed by appellate courts to finders of fact is at its highest where the issue turns on the resolution of a direct conflict between live witnesses." In re Windle, 653 F.2d 328, 331 (8th Cir. 1981). "We may not reverse the bankruptcy court's factual findings unless after reviewing the record we are left with the definite and firm conviction that a mistake has been committed." In re Waugh, 95 F.3d 706, 711 (8th Cir. 1996) (internal quotation marks and citation omitted). However, "[e]ven when based on witness credibility, the bankruptcy court's factual findings are not completely insulated from appellate review." Id. (citing Griffin v. City of Omaha, 785 F.2d 620, 626 (8th Cir. 1986)). "Where . . . objective evidence contradict[s] a witness's story, or that story is so internally inconsistent or implausible that a reasonable factfinder would not credit it, a reviewing court may find clear error even in a finding purportedly based on a credibility determination." Id. (internal quotations marks and citation omitted).

---

[6]Wyse and Williams also contend the bankruptcy court erred in articulating the burden of proof in the hearing on their motion for relief. We find no merit to this contention.

-7-

After carefully reviewing the evidence, we are not convinced a mistake was committed. King's testimony had some inconsistencies. Williams, however, failed to introduce sufficient objective credible evidence to contradict King. Instead he offered his own inconsistent testimony and the testimony of a witness who, although credible, was only able to corroborate immaterial facts. In the absence of objective credible evidence to contradict King's testimony, we defer to the credibility determination made by the bankruptcy court.

B.     Incorporation of Post-Conversion Debt into Debt Injunction

Wyse and Williams next contend the bankruptcy court erred by incorporating the debts King incurred to Williams after the conversion date into the debt injunction such that Wyse could be sanctioned for pursuing the state court action to collect them. To the extent Wyse and Williams challenge the imposition of sanctions, they misunderstand the basis for the sanction. The bankruptcy court maintained the order of sanctions against Wyse for seeking to collect the portion of the $76,200 derived from King's pre-conversion debt to Williams, not for seeking to collect the post-discharge debts in the state court action. The bankruptcy court was perfectly within its discretion to impose the sanction.

To the extent Wyse and Williams contend they should be allowed to seek to collect any post-conversion debt King incurred to Williams on April 19, 2010, they cannot now fault the bankruptcy court for their own failure to carry the burden of proof. The bankruptcy court made clear it would have amended the initial sanctions order to allow Williams to pursue such debt had Williams provided sufficient evidence to prove how much of the $76,200 Williams had provided to King on April 19, 2010. The bankruptcy court found William's testimony he had provided $81,000 to King in various forms on that date not credible in light of Williams's assertion in earlier proceedings the entire $76,200 was reaffirmed debt which King had incurred prior to April 12, 2010. Given Williams's failure to introduce any other evidence

regarding the specific amount of money he provided to King on April 19, 2010, the bankruptcy court did not clearly err in finding Williams had not proven the exact amount of post-conversion debt King had incurred on that date.

IV

Williams and Wyse next contend the bankruptcy court improperly denied their second motion for relief or rehearing, in which they sought to raise legal arguments they had neglected to bring in their first such motion. We construe the motion as one brought pursuant to Fed. R. Civ. P. 60(b).[7] We review the denial of a Rule 60(b) motion for an abuse of discretion. Brooks v. Ferguson-Florissant Sch. Dist., 113 F.3d 903, 905 (8th Cir. 1997). "Reversal . . . of a Rule 60(b) motion is rare because Rule 60(b) authorizes relief in only the most exceptional of cases." Noah v. Bond Cold Storage, 408 F.3d 1043, 1045 (8th Cir. 2005) (quoting Int'l Bhd. of Elec. Workers v. Hope Elec. Corp., 293 F.3d 409, 415 (8th Cir. 2002)). After review of the record, we find nothing, much less an exceptional circumstance, prevented Williams and Wyse from asserting their neglected arguments in their first motion for relief. Accordingly, the bankruptcy court did not abuse its discretion in denying the second motion for relief brought solely to raise those arguments.

---

[7]Williams and Wyse also assert as bases for their motion Fed. R. Civ. P. 59(e) and Federal Rules of Bankruptcy Procedure Rule 8015 and Rule 9024, which incorporates Fed. R. Civ. P. 60 into bankruptcy proceedings. They could not, however, have brought their motion pursuant to Rule 59(e) as a party may not use a Rule 59(e) motion to assert new legal theories. Holder v. United States, 721 F.3d 979, 986 (8th Cir. 2013). Rule 8015 is also inapposite as it applies to motions for rehearing before courts reviewing the order of the bankruptcy court, not the bankruptcy court itself.

-9-

V

For the foregoing reasons, we affirm the judgment of the bankruptcy court.

_____